[No. 23485. Department One. April 21, 1932.]

RAYMOND LASHBROOK, *Respondent*, v. SPOKANE-WALLACE STAGES, INC., *et al., Appellants.*[1]

[1]Reported in 10 P. (2d) 241.

*Hamblen & Gilbert (Philip S. Brooke,* of counsel), for appellants.

*Robertson & Smith,* for respondent.

PARKER, J.—The plaintiff, Lashbrook, commenced this action in the superior court for Spokane county, seeking recovery of damages for personal injuries suffered by him, as he claims, as the result of the negligent driving of one of the stages of the defendant Stages, Inc. He claims such recovery against the Stages, Inc., and also against the defendant insurance company as the insurer of persons suffering damage as the result of the negligent operation of the stage.

The cause proceeded to trial in the superior court, sitting with a jury, the issues being as to negligence of the Stages, Inc., and contributory negligence imputable to Lashbrook. A verdict was returned awarding to Lashbrook recovery in the sum of four thousand dollars against both defendants. Following denial of their motions jointly made for judgment notwithstanding the verdict and, in the alternative, for a new trial, final judgment was rendered upon the verdict against both of them, from which they have jointly appealed to this court.

It is first contended in behalf of appellants that the evidence does not support the verdict and judgment. The evidence is in serious conflict touching both the negligence of the driver of the stage and contributory negligence imputable to Lashbrook. However, there was presented to the jurors evidence which, we think, well warranted them in viewing the controlling facts to be, in substance, as follows:

The accident occurred on a paved highway, some

twelve miles east of the city of Spokane. At the place of the accident, the highway runs east and west. The pavement there was twenty feet wide, with a comparatively smooth shoulder on either side thereof four feet wide. The stage was approximately seven feet wide and thirty-three feet long. A Ford coupe was owned and being driven by Mason. Lashbrook and Mason were riding together in the Ford coupe, concededly engaged in a joint venture.

The accident occurred at about eight o'clock in the morning of December 12, 1930. There were then about two inches of snow upon the ground, which had fallen during the previous night. In the early morning before the accident occurred, the snow had been scraped off the pavement, leaving a ridge of soft snow about six inches high along the south edge of the pavement. Whether or not this ridge was on or off the pavement, is not made plain. But it does seem plain that practically the whole of the pavement had been so scraped off. The pavement was left slippery, it not being entirely clear of snow and ice.

The stage was proceeding west on its regular morning trip from Coeur d'Alene to Spokane, at a speed of about thirty miles per hour, when it was overtaken by Mason driving his Ford coupe, Lashbrook riding with him, they being also on their way from Coeur d'Alene to Spokane. The stage was then well over on its right side of the pavement. There was even more than the south half of the pavement clear for the passing of any overtaking automobile.

Seeing this situation, Mason sounded his horn, giving warning of his intention to pass the stage, and accelerated his speed somewhat, but at no time to exceed forty miles per hour, that being the legal speed limit at that place. The driver of the stage knew that the Ford was about to pass on his left. The speed of

the stage was not materially increased while it was being passed by the Ford.

When the Ford had come up about half-way alongside the stage, it swerved over to the left towards the Ford. Mason then, in order to avoid contact with the stage as he saw the situation, vigorously sounded his horn and turned his Ford farther to the left to the extent that its two left wheels passed over the snow ridge and ran for some distance with those wheels along on the shoulder some one or two feet off the left side of the pavement.

Very soon thereafter, the forward left corner of the stage, evidently its bumper, came into contact with the rear right corner of the Ford, causing the rear of the Ford to swerve to the left away from the stage and its front to swerve to the right in front of the stage. The Ford was pushed forward by the stage a considerable distance, and came to rest off the right side of the pavement, where it turned over in the ditch, causing the injuries to Lashbrook of which he complains. The stage passed on a short distance before it came to a stop.

There is some testimony, even by Lashbrook's witnesses, indicating that, just before the contact occurred, the rear of the Ford had skidded a foot or two to the right towards the stage, but there is also testimony that the left front part of the stage was at that time a considerable distance over on the left half of the pavement, and that otherwise there would have been no contact between the two cars, though the Ford may have skidded even two or three feet to its right.

The jury being warranted in viewing these facts as established by the evidence, it seems plain to us that it should not be decided, as a matter of law,

that the evidence fails to support the verdict and judgment.

In support of appellants' alternative motion for a new trial, it is contended that the trial judge erred to their prejudice in refusing to permit their counsel to read to the jury the deposition of Lashbrook, which they caused to be taken some time prior to the trial. After Lashbrook had testified during the trial in his own behalf and had been cross-examined by counsel for appellants, and had thereby very fully testified as to his version as to how the accident occurred, there occurred, in connection with the introduction of evidence introduced in behalf of appellants, the following:

"MR. BROOKE [of counsel for appellants]: The defendants at this time offer to read into the record the deposition of Raymond Lashbrook, the plaintiff, which was taken pursuant to notice served upon plaintiff's counsel. MR. ROBERTSON [of counsel for Lashbrook]: I object to the reading of the deposition upon the ground that, where the plaintiff has testified and there is no contradiction in the testimony [between his trial and deposition testimony], the reading of the deposition is not proper. THE COURT: The exception will be sustained."

It was not claimed that Lashbrook's deposition testimony was in any respect contradictory to his trial testimony. Indeed, a careful comparison of his deposition testimony with his trial testimony, we think, fails to show any substantial contradictions or inconsistencies therein, and that to read his deposition testimony to the jury during the trial would be but to repeat some considerable portion of his trial testimony. Thus it seems plain to us that this ruling of the trial judge did not constitute error prejudicial to appellants.

█ We do not overlook our Rule of Practice VIII, found in 159 Wash. lxii, relied upon by counsel for appellants, reading in part as follows:

."1. The testimony of a witness may be taken by deposition, to be read in evidence in an action, suit, or proceeding commenced and pending in any court in this state, in the following cases: . . .

"(5) When the witness is (a) a party to the action . . . ;" (Rem. 1927 Sup., § 308-8.)

which rule has the effect of adding the above subdivision (5) to Rem. Comp. Stat., § 1231, relating to depositions. But we do not regard that rule as permitting, as a matter of right, the reading to the jury during the trial of a deposition of a party when such reading would have the result only of repeating what the party had already testified to as a witness during the trial. We are of the opinion that there was no prejudicial error in this ruling of the court.

█ In support of appellants' alternative motion for new trial, it is further contended that the trial judge erred to their prejudice in giving to the jury that portion of his instruction No. 2, in connection with his stating the issues, reading as follows:

"Paragraph 2 of the complaint reads as follows:

" 'That all of the said passenger coaches, as well as all other equipment of the defendant Spokane-Wallace Stages, Inc., were insured by the United Pacific Casualty Insurance Company, under insurance policy No. 58165, filed in accordance with law with the Director of Public Works of the State of Washington, and that by the terms of said policy said United Pacific Casualty Insurance Company *insured and agreed to pay the sum of $5,000 for injury to any one person by any of the motor coaches* or equipment of said defendant Spokane-Wallace Stages, Inc., and particularly insured against injury in said sum by the said motor coach hereinafter referred to, in the sum of $5,000 for injury to any one person; and that said insurance

policy was in full force and effect on December 12, 1930.'

"The answer of the defendants to Paragraph 2 of the complaint reads as follows:

" 'Admit that all of the passenger coaches of the defendant Spokane-Wallace Stages, Inc., were insured by the United Pacific Casualty Insurance Company under insurance policy No. 58165, filed in accordance with the law with the Director of Public Works of the State of Washington, and admit that by the terms of said policy said United Pacific Casualty Insurance Company *insured and agreed to pay the sum of $5000 for injury to any one person caused by the negligent operation of any of said motor coaches,* and that said insurance policy was in full force and effect on December 12, 1930, and deny each and every other allegation, matter and thing contained in said Paragraph Two.' "

We italicize the words to be particularly noticed. It is contended, in substance, that this was, in effect, advising the jury that there was an issue as to whether the insurance was such as to render the insurance company absolutely liable to Lashbrook for his injuries or liable only for negligence of the Stages, Inc., resulting in his injuries.

It is true that the first part of the instruction does suggest a claim of absolute insurance as against the insurance company in favor of Lashbrook for his injuries. But the latter part of the instruction shows an admission on the part of the insurance company in its answer, jointly made with its co-defendant, that the insurance was against "negligent operation of any of said motor coaches."

Throughout the trial, it proceeded on the part of all parties to the action upon the manifestly plain understanding that such was the nature of the insurance by virtue of which Lashbrook was claiming recovery against the insurance company. The trial judge, by

several expressions elsewhere in his instructions, plainly gave the jury to understand that there could not be any recovery against the insurance company in the absence of negligence on the part of the Stages, Inc., resulting in Lashbrook's injuries. We are of the opinion that, under the circumstances, the above quoted first portion of the trial judge's Instruction No. 2 was not prejudicial to either of the appellants.

 While Oglesbee, a witness for appellants, was on the stand, the following occurred:

"MR. BROOKE: Q. Immediately following this collision, just after Charles Mason had been pulled out of the car and had come to, did he or did he not tell you the accident was unavoidable? A. He did. [This was not objected to.] Q. What other conversation, if any, did you have with him at that time concerning this accident? MR. ROBERTSON: That is objected to as incompetent, irrelevant and immaterial, not binding upon the plaintiff. THE COURT: Objection sustained. MR. BROOKE: At this time the defendants offer to prove by the witness Oglesbee that immediately following the accident and within one or two minutes after its occurrence, just as soon as Charles Mason had been pulled out of the car and came to, he stated in the presence of Oglesbee that he was going about forty miles an hour, and for them not to tell anything about it to his parents."

This was objected to by Mr. Robertson and his objection by the court sustained, Mr. Brooke having stated, in part, that, "This is part of the *res gestae.*"

It may be conceded that the proposed proof that Mason had so stated that "he was going about forty miles an hour" should be considered as a part of the *res gestae* touching the matter of the speed he was driving; but we do not see in the record any substantial controversy over the speed of either the stage or of Mason's car. Mason's testimony during the trial

32

as to the speed of his car was but slightly inconsistent with his statement proposed to be proven. It seems to us, under the circumstances, that, though the exclusion of this proposed *res gestae* proof may have been technically erroneous, it was a matter of too small moment to be held prejudicial to the rights of appellants.

We conclude that the judgment must be affirmed. It is so ordered.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.

[1]Reported in 10 P. (2d) 245.